IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAXIMINO M. ESTRADA, Individually and as : 
Administrator of the Estate of Yolanda A. : 
Carias-Santos, deceased, : 
               Plaintiff : CIVIL ACTION NO: _____

     :
     vs. :
     :
HOME DEPOT U.S.A., INC., HONDA NORTH : 
AMERICA, INC., and MTA DISTRIBUTORS, : 
INC., : 
               Defendants : FOR JURY TRIAL

COMPLAINT

I.     Jurisdiction

    1.     The Plaintiff brings these claims before the United States District Court for the Eastern District of Pennsylvania invoking its jurisdiction based upon diversity of citizenship and the amount in controversy as more fully set forth in the United States Code, 28 U.S.C. Section 1332(a) exceeding $75,000 exclusive of interest and costs.

    2.  Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the circumstances giving rise to the claims and cause of action occurred within its territory in Berks County, Pennsylvania, as more fully described below.

II.    The Parties

    3.  The Plaintiff, Maximino M. Estrada ("Mr. Estrada"), is an adult individual, citizen of the United States of America, and resident of the Commonwealth of Pennsylvania with an address of 1601 Frush Valley Road, Laureldale, Berks County, Pennsylvania 19605.

    4.  Mr. Estrada and Plaintiff's decedent, Yolanda A. Carias-Santos ("Yolanda"), were married on March 29, 2006 and resided as husband and wife until the occasion of the death of Yolanda on December 24, 2007 as more fully described below.

1

5.   Mr. Estrada filed a Petition for Grant of Letters with the Register of Wills of Berks County on January 9, 2008 and was named Administrator upon Letters of Administration issued by Larry Medaglia, Register of Wills for the County of Berks the same day.

6.   The decedent, Yolanda A. Carias-Santos left no Will and was survived by the following heirs:

(a)   Maximino M. Estrada, husband;

(b)   Lilibeth Zuliangie Carias, daughter (D.O.B. 9/10/02); and

(c)   Kobe Max Estrada Carias, son (D.O.B. 8/30/06).

7.   Mr. Estrada brings these claims for wrongful death and a survival action for the benefit of those persons entitled by law to recover damages for such wrongful death pursuant to Pennsylvania Rule of Civil Procedure 2202(a).

8.   Mr. Estrada, as Administrator of his late wife's estate, maintains this survival action as personal representative for the benefit of the estate.

9.   Mr. Estrada brings this action in his own right and as personal representative of the Estate of Yolanda A. Carias-Santos, his late wife, to recover damages under the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302 and the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. Section 8301, and on behalf of all wrongful death beneficiaries of Plaintiff's decedent, specifically including Mr. Estrada and the decedent's minor children, Lilibeth Zuliangie Carias and Kobe Max Estrada Carias.

10.   The Defendant, Home Depot, U.S.A., Inc. (hereinafter referred to as "Home Depot"), is a conglomerate corporation or other legal entity incorporated under the laws of a state other than the Commonwealth of Pennsylvania with a principal place of business located at 2455 Paces Ferry Road SE, Atlanta, George 30339-4024.

2

11. The Defendant, Honda North America, Inc. (hereinafter referred to as "Honda"), is a conglomerate corporation or other legal entity incorporated under the laws of a state other than the Commonwealth of Pennsylvania with a principal place of business located at 700 Van Ness Avenue, Torrance, California 90501-1486.

12. The Defendant, MTA Distributors, Inc. (hereinafter referred to as "MTA"), is a corporation incorporated under the laws of a state other than the Commonwealth of Pennsylvania with a principal place of business located at 555 Hickory Hills Blvd., Whites Creek, TN 37189-9244.

13. All acts attributed to any defending corporation or entity are acts by and through their agents, servants, workers, employees, and representatives.

III.    The Accident

14. Mr. Estrada and his wife, Yolanda, resided with their two children in an apartment at 205 Oley Street, Reading, Berks County, Pennsylvania just prior to the circumstances described more fully below.

15. Mr. Estrada and Yolanda had been planning to move beyond the City of Reading and into its suburbs, purchasing their first home together at 1601 Frush Valley Road, Laureldale, Berks County, PA 19605.

16. Settlement on their new home occurred on or about December 22, 2007.

17. Mr. Estrada and Yolanda notified their Reading apartment's landlord that they would vacate their apartment by December 31, 2007 and begin residing in their new home as of January 1, 2008.

18. Electricity from the public utility serving Laureldale was not scheduled to be provided until January 1, 2008 to their new home.

3

19. In planning ahead for their move, Yolanda desired to clean, shampoo, and deodorize the carpets before any furniture was delivered.

20. Yolanda went to Home Depot, Store 4110, 1731 Crossing Drive, Wyomissing, Berks County, PA 19610, on December 24, 2007 arriving sometime after 11:00 a.m. for advice, guidance, and recommendations how to attend to the carpets in their new home, leaving Home Depot estimated to be sometime after 12:30 p.m.

21. Customer Service sales representatives from Home Depot provided information, guidance, recommendations, demonstrations, and instructions to Yolanda in connection with renting and operating a portable Honda 3,000 watt gasoline-powered electric generator, Serial No. EZGP 1161487 ("generator"), with an electric carpet cleaner manufactured by Kent Investment Company, along with selling Yolanda a bottle of carpet cleaner called Aqua Power Professional Carpet Cleaner and a bottle of chemical deodorizer called Aqua Power Deodorizer.

22. Customer service sales representatives from Home Depot demonstrated the use of the generator and carpet cleaning machine since Yolanda explained she had never used a gasoline-powered electric generator.

23. Customer service sales representatives started the generator indoors to demonstrate its operation but failed to test its carbon monoxide output or otherwise satisfy themselves that the generator was running properly and safely, was not malfunctioning with excessive carbon monoxide output, and was otherwise functioning within its design parameters in all respects.

24. At no time did the customer service sales representatives suggest, instruct, warn, or require that the generator be operated outdoors.

4

25. At no time did the customer service sales staff suggest, instruct, warn, or mention the hazard of carbon monoxide poisoning and hazard of asphyxiation if the generator was used indoors.

26. The Home Depot customer service sales representatives never mentioned, suggested, warned, recommended, or required that Yolanda be provided or asked to purchase an electric extension cord appropriate for the circumstances, which Home Depot had in its inventory and could have easily been supplied, so that Yolanda could place the generator outdoors in order to safely operate the carpet cleaning machine indoors.

27. Home Depot did not provide guidance, warnings, or instruction nor did the generator contain adequate guidance, warnings, or instruction that it should never be used indoors under any circumstance and should only be operated outdoors because of the lethal risk of carbon monoxide poisoning and asphyxiation if the generator was used indoors.

28. Home Depot customer service sales staff assisted Yolanda loading the generator, carpet cleaning machine, and carpet cleaning chemicals into her automobile.

29. Yolanda proceeded from Home Depot in the early afternoon of December 24, 2007 directly to her new home at 1601 Frush Valley Road, Laureldale, Pennsylvania.

30. Not realizing the hazards, risks, and dangers associated with operating the generator indoors, Yolanda proceeded to operate and use the generator and carpet cleaning equipment at her new home indoors in a small upstairs bedroom area with one window open four to five inches.

31. After a period of time unknowingly breathing carbon monoxide, Yolanda succumbed to carbon monoxide poisoning and toxicity causing her eventual asphyxiation and death.

32. Yolanda was using the generator indoors to power the electric carpet cleaning machine at the time of her death and was eventually found by police authorities collapsed around the equipment which was still operating.

33. The subject generator was manufactured by Co-Defendant Honda North America, Inc.

34. The subject Honda generator was distributed and delivered to Home Depot by Co-Defendant MTA Distributors, Inc. which had the exclusive distribution rights of Honda generators to Home Depot stores in the United States of America and was, therefore, in the chain of distribution of the generator.

### CLAIMS AGAINST HOME DEPOT

<u>COUNT I</u>
(Wrongful Death Action for Negligence – Home Depot)

35. Plaintiff incorporates paragraphs 1 through 34, inclusive, of this Complaint as though textually set forth at length herein.

36. Home Depot is an American retailer of home improvement and construction products and services headquartered in Smyrna, Georgia.

37. Home Depot employs more than 355,000 people and operates 2,141 big-box format stores across the United States including the fifty United States, the District of Columbia, Puerto Rico, the Virgin Islands, Guam, Canada (ten provinces), Mexico, and China selling and renting portable gasoline-powered electric generators of various makes, models, and wattage outputs from all of its retail stores.

38. Home Depot is the largest home improvement retailer in the United States ahead of rival Lowe's and the second largest general retailer in the United States behind Wal-Mart.

39. The slogan "You can do it. We can help." has been used by Home Depot since 2003 and was part of the advertising campaign encouraging consumer self-help home improvement projects for its chain of stores including the Home Depot Reading store where Yolanda rented the gasoline-powered generator and carpet cleaning equipment.

40. Home Depot knew, or should have known, that gasoline-powered generators it was selling and renting to members of the consuming public caused carbon monoxide asphyxiation and death within minutes if such equipment was used indoors.

41. Home Depot failed to adequately teach its employees and customer service sales representatives about the hazards of gasoline-powered generators used indoors and/or failed to encourage, supervise, require, and mandate that their customer service sales representatives teach, train, review, and cover such hazards with Home Depot's customers renting such generator equipment.

42. Home Depot was aware of industry trends that gasoline-powered generators were causing an increasing number of deaths because of their increasing frequency of use indoors yet, Home Depot failed to take appropriate action to train its staff generally about the risks of carbon monoxide poisoning and asphyxiation, and particularly the Home Depot employees and customer service sales representatives at the Home Depot store in Wyomissing, Berks County, Pennsylvania where Yolanda rented her gasoline-powered generator.

43. Home Depot failed to advise or adequately advise Yolanda that using a gasoline-powered generator indoors would cause carbon monoxide poisoning, asphyxiation, and death within minutes.

44. Home Depot failed to suggest, instruct, or require that Yolanda utilize an electric extension cord with the equipment, an additional sale of product Home Depot could have made,

7

in order to protect herself from carbon monoxide poisoning and asphyxiation by placing the gasoline-powered generator outdoors, running an extension cord from the generator indoors to the location where carpets would be cleaned, and plugging the electric carpet cleaning machine into the extension cord.

45.  Home Depot negligently provided the subject generator to Yolanda without adequate testing for carbon monoxide output, operating manuals, training materials, and instructions for its safe use; and without proper, effective, and adequate warnings of its dangerous characteristics when Home Depot knew, or should have known, that using a gasoline-powered generator indoors was extremely dangerous, presented extreme risk of deadly hazard, and would cause death by asphyxiation from carbon monoxide poisoning within minutes.

46.  Home Depot was grossly negligent, reckless, and willful showing wanton disregard for human life and the known hazards of carbon monoxide poisoning and asphyxiation by showing and instructing Yolanda how to start and operate the generator while inside the Home Depot store and at a time that Home Depot was aware of known industry trends showing an increasing number of fatalities from indoor generator use.

47.  Home Depot's demonstration of how to operate the generator indoors was grossly negligent, reckless, and willful showing a wanton disregard for human life because it implied to Yolanda, and any reasonable person under similar circumstances, that it was safe to use the generator indoors, belying the deadly hazard such practice would create.

48.  As a result of Yolanda's death, Mr. Estrada, individually and as Administrator of the estate, is entitled to recover under Pennsylvania's Wrongful Death Act because the beneficiaries have suffered pecuniary and other losses including Yolanda's services, care, companionship, guidance, tutelage, and consortium.

49. On account of the negligent conduct of Home Depot set forth herein, and the resulting death of Yolanda, Mr. Estrada is entitled to recover under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. Section 8301, and also as personal representative of the Estate for pecuniary losses sustained as a proximate result of decedent's death, including loss of monies expended for estate administration, loss of inheritance, and loss of decedent's financial contributions, support, services, care, guidance, advice, companionship, affections, tutelage, comfort, and consortium, and interest on pecuniary losses sustained.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

### COUNT II
(Survival Action for Negligence – Home Depot)

50. Mr. Estrada incorporates paragraphs 1 through 49, inclusive, of this Complaint as though textually set forth at length herein.

51. Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-Santos, deceased pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

52. As a direct result of the negligent conduct of Home Depot, Yolanda suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

53. As a direct result of the negligent conduct of Home Depot and the resulting death of Yolanda, Mr. Estrada and the Estate of Yolanda A. Carias-Santos have sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

54. Mr. Estrada is also entitled to punitive, exemplary damages against this Defendant for its grossly negligent, reckless, wanton, willful conduct described earlier in this Complaint.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT III

(Wrongful Death Action for Strict Liability in Tort – Home Depot)

55. Mr. Estrada incorporates herein paragraphs 1 through 34, inclusive, as though textually set forth at length herein.

56. As a supplier of the portable Honda gasoline-powered generator, Home Depot was a retailer in the chain of distribution and is strictly liable for the defective condition of the generator to the extent the generator is found to have been defective and the proximate cause of the death of Yolanda A. Carias-Santos.

57. As a result of providing a defective gasoline-powered Honda generator to Yolanda A. Carias-Santos, Home Depot is strictly liable in tort to Mr. Estrada in his capacity as personal representative pursuant to the Pennsylvania Wrongful Death Act for any and all damages proximately caused thereby, including the damages sustained as a result of the Yolanda's death.

58. The Honda generator was manufactured in a defective condition because it lacked sufficient warnings, instructions, literature, and general information necessary to put the end-users on notice of the lethal hazard of carbon monoxide poisoning and death within minutes if the generator were used indoors.

59. To the extent testing of the generator reveals any other defects such as excessive carbon monoxide exhaust and related factors causing the death of Yolanda, then the generator was also defective for its flawed design, flawed manufacture, or malfunction when used.

10

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT IV<br>(Survival Action for Strict Liability in Tort – Home Depot)

60.  Mr. Estrada incorporates herein paragraphs 1 through 34, inclusive, and 56 through 59 as though textually set forth at length herein.

61.  Mr. Estrada brings this count as Administrator of the Yolanda's estate pursuant to the Pennsylvania Survival Act.

62.  As a result of the breaches of duty, misrepresentations, and defects of the generator against Home Depot hereinabove alleged, Yolanda suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

63.  As a result of the breaches of duty and misrepresentations of Home Depot resulting in Yolanda's death, the Estate of Yolanda A. Carias-Santos has sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT V<br>(Wrongful Death Action – Breach of Warranty – Home Depot)

64.  Mr. Estrada incorporates herein paragraphs 1 through 34, inclusive, as though textually set forth at length herein.

11

65. Home Depot expressly and/or impliedly warranted that the Honda gasoline-powered generator rented to Yolanda with and/or without accessories, its appurtenant parts and instructions was merchantable, fit, suitable, proper, and safe for the ordinary and particular purposes for which it was sold as evidenced in the promotion, selling, supplying, and/or delivering of the Honda gasoline-powered generator to Yolanda.

66. Yolanda sought, and Home Depot provided advice, guidance, and recommendations on the equipment necessary to fulfill Yolanda's desire to clean indoor carpets including the type, style, and model of portable gasoline-powered electric generators, yet Home Depot breached these express and implied warranties by delivering and/or supplying the Honda gasoline-powered generator in an unsafe, defective, and unfit condition as described above.

67. Yolanda's death was the proximate result of Home Depot's breach of warranties because the generator did not conform to the express or implied warranties for its safe use indoors.

68. As a result of Home Depot's breach of warranties alleged herein, Home Depot is liable to Mr. Estrada individually and in his capacity as personal representative pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. Section 8301, for any and all damages proximately caused thereby including the damages sustained as the result of Yolanda's death.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT VI
(Survival Action – Breach of Warranty – Home Depot)

69. Mr. Estrada incorporates paragraphs 1 through 34, inclusive, and 65 through 68 as if textually set forth at length herein.

12

70. Mr. Estrada brings this count individually and as Administrator of the Estate of Yolanda A. Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

71. As a direct result of the breach of express and implied warranties hereinabove alleged, Plaintiff's decedent suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

72. As a result of the breach of express and implied warranties resulting in the death of Plaintiff's decedent hereinabove alleged, the Estate of Yolanda A. Carias-Santos has sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

### CLAIMS AGAINST HONDA

<u>COUNT VII</u>
(Wrongful Death Action for Negligence -- Honda)

73. Mr. Estrada incorporates paragraphs 1 through 34, inclusive, as if textually set forth at length herein.

74. As designer, fabricator, manufacturer, and supplier of the generator, Honda had a duty to supply purchasers, distributors, wholesalers, retailer, end-users, and operators with placards, manuals, instructions, and training materials which were instructive of the serious nature of the lethal hazard using a gasoline-powered generator indoors and that such generator

equipment can kill in minutes if used indoors because of fatal risk of carbon monoxide poisoning and asphyxiation.

75. Honda had a duty to supply clear, complete, adequate instructions, placards, training materials, and other information covering all known and reasonably foreseeable operations and conditions expected to be encountered with normal use of the generator including, but not limited to, its retail vendors such as Home Depot selling or renting such equipment to customers for indoor home improvement projects.

76. Honda had a duty yet failed to provide adequate and sufficient warnings of all dangerous and potentially dangerous characteristics of the generator including the risk of carbon monoxide poisoning and asphyxiation knowing its generators were used indoors.

77. Honda had a duty yet failed to provide clear and complete instructions including placards on its generators such as the generator rented to Yolanda in order to warn the users that use of generators indoors can cause carbon monoxide poisoning and death in minutes.

78. Honda breached its duties alleged above and as a result placed into the stream of commerce the subject generator in a defective condition, lacking adequate training materials, placards, and instructions for its use and without adequate warnings of the consequences including risk of death occurring within minutes if such generator was used indoors.

79. Honda, through its manuals, sales literature, advertisements, training materials, and by its authorized employees or representatives, acting in and the course and scope of their employment, misrepresented material facts concerning the characteristics of the subject generator by the omission of important warning information placarded directly to the equipment and instructing all persons in its stream of distribution including, but not limited to, MTA to make certain end users were aware of such hazards described hereinabove.

14

80. Honda was aware that persons were using its gasoline-powered generators indoors but failed to take adequate steps to warn and protect such customers by placing clear, bold, and complete warnings against using such equipment indoors thereby acting in a grossly negligent, reckless manner showing wanton disregard for human life.

81. Honda improperly designed, manufactured, certified, tested, and supplied a malfunctioning generator if it produced excessive levels of carbon monoxide; and/or without adequate manuals, training materials, and instructions for its use, and/or without adequate warnings of its dangerous characteristics when Honda knew, or should have known, that the generator was defective, unreasonably dangerous, and prone to cause death if anyone used such a generator indoors.

82. On account of the negligent conduct of Honda set forth herein and the resulting death of Yolanda, Mr. Estrada is entitled to recover under the Pennsylvania Wrongful Death Act individually and as Administrator of the Estate of Yolanda A. Carias-Santos for pecuniary losses sustained as a proximate result of Yolanda's death, including loss of monies expended for estate administration, loss of inheritance, and loss of Yolanda's financial contributions, support, services, care, guidance, advice, companionship, affections, tutelage, comfort, consortium, and interest on the pecuniary losses sustained.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Honda North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT VIII
(Survival Action for Negligence -- Honda)

83. Mr. Estrada incorporates paragraphs 1 through 34 and 74 through 82, inclusive, as if textually set forth at length herein.

15

84. Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

85. As a direct result of the negligent conduct of Honda hereinabove alleged, Plaintiff's decedent suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

86. As a direct result of the negligent conduct of Honda and the resulting death of Yolanda, Mr. Estrada and the Estate of Yolanda A. Carias-Santos have sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Home Depot U.S.A., Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT IX
(Wrongful Death Action for Strict Liability in Tort – Honda)

87. Mr. Estrada incorporates herein paragraphs 1 through 34 and 74 through 81, inclusive, as though textually set forth at length herein.

88. At all times mentioned herein, the generator equipment with its appurtenant parts, instructions, and warnings was expected to and did in fact reach its intended users and/or consumers without substantial change or alteration of any kind in the condition in which it was manufactured and sold by Honda.

89. At all times mentioned herein and at the time of the rental sale on December 24, 2007, the generator with its appurtenant parts, instructions, and warnings was in a defective

condition which was dangerous to its intended users, including Home Depot's customer, Yolanda A. Carias-Santos.

90. At all times mentioned herein and at the time of the rental sale on December 24, 2007, the generator with its appurtenant parts, instructions, and warnings was inherently dangerous, and if the generator emitted excessive carbon monoxide exhaust, the generator was flawed in its design, flawed in its manufacture and assembly, or malfunctioned, any or all of which rendered it defective, dangerous, and inherently dangerous to its intended users.

91. The aforementioned defects in the equipment with its appurtenant parts, instructions, and warnings were a factor, substantial factor, and proximate cause of the carbon monoxide poisoning, asphyxiation, and death of Yolanda A. Carias-Santos.

92. At all times mentioned herein and at the time of the rental sale and on December 24, 2007 the generator with its appurtenant parts, instructions, and warnings was defectively designed and therefore dangerous to its intended users.

93. At all times mentioned herein, the aforementioned generator with its appurtenant parts, instructions, and warnings lacked adequate warnings which were expected to and did in fact reach the intended users and/or consumers without substantial change or alteration of any kind in its content, quality, or condition than when the generator equipment was rented to Plaintiff's decedent.

94. Honda is strictly liable in tort to Mr. Estrada for the design, manufacture, marketing, and sale of its defective generator product.

95. On account of the conduct of Honda set forth herein and the resulting death of Yolanda, Mr. Estrada is entitled to recover under the Pennsylvania Wrongful Death Act as Administrator of the Estate of Yolanda A. Carias-Santos for pecuniary losses sustained as a

proximate result of Yolanda's death including the loss of monies expended for estate

administration, loss of inheritance, and loss of Yolanda's financial contributions, support,

services, care, guidance, advice, companionship, affections, tutelage, comfort, consortium, and

interest on the pecuniary losses sustained.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant,

Honda North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits,

plus interest, costs, and such other amounts as allowed under law.

COUNT X
(Survival Action for Strict Liability in Tort – Honda)

96. Mr. Estrada incorporates herein paragraphs 1 through 34, 74 through 81, and 88

through 95, inclusive, as though textually set forth at length herein.

97. Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-

Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section

8302.

98. As a direct result of the tortious conduct of Honda hereinabove alleged, Plaintiff's

decedent suffered conscious pain and suffering for which recovery is sought under the

Pennsylvania Survival Act.

99. As a direct result of the tortious conduct of Honda and the resulting death of

Yolanda, Mr. Estrada and the Estate of Yolanda A. Carias-Santos have sustained pecuniary

losses, with interest, including loss of future earnings and financial contributions to the estate, as

well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant,

Honda North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits,

18

punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT XI
(Wrongful Death Action – Breach of Warranty - Honda)

100.     Mr. Estrada incorporates herein paragraphs 1 through 34, 74 through 81, and 88 through 99, inclusive, as though textually set forth at length herein.

101.     Honda expressly and/or impliedly warranted that the gasoline-powered generator rented to Yolanda A. Carias-Santos was merchantable, fit, and safe for the ordinary and particular purposes for which it was sold as evidenced in the promotion, selling, supplying, and/or delivering of the gasoline-powered generator to its distributors, wholesalers, retailers, and end-users including Yolanda.

102.     Honda breached these express and implied warranties by delivering and/or supplying the gasoline-powered generator in an unsafe, defective, and unfit condition as described above.

103.     The resulting injuries and death of Yolanda were the proximate result of Honda's breach of warranties.

104.     As a result of Honda's breach of warranties alleged herein, Honda is liable to Mr. Estrada individually and in his capacity as personal representative pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. Section 8301, for any and all damages proximately caused thereby including the damages sustained as the result of the death of Plaintiff's decedent.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Honda North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

19

## COUNT XII
### (Survival Action – Breach of Warranty - Honda)

105.   Mr. Estrada incorporates paragraphs 100 through 104, inclusive, as if textually set forth at length herein.

106.   Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

107.   As a direct result of the breach of express and implied warranties hereinabove alleged, Yolanda suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

108.   As a result of the breach of express and implied warranties resulting in the death of Yolanda, the Estate of Yolanda A. Carias-Santos has sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, Honda North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

### CLAIMS AGAINST MTA DISTRIBUTORS, INC.

## COUNT XIII
### (Wrongful Death Action for Negligence – MTA)

109.   Mr. Estrada incorporates paragraphs 1 through 34, inclusive, as if textually set forth at length herein.

20

110.    As designer, fabricator, manufacturer, and/or supplier of the generator and safety-related equipment and instructions, MTA had a duty to supply purchasers, distributors, wholesalers, retailer, end-users, and operators with placards, manuals, instructions, and training materials which were instructive of the serious nature of the lethal hazard using a gasoline-powered generator indoors and that such generator equipment can kill in minutes if used indoors because of fatal risk of carbon monoxide poisoning and asphyxiation.

111.    MTA, as a distributor of Honda generators, had a duty to supply clear, complete, and adequate instructions, placards, training materials, and other information covering all known and reasonably foreseeable operations and conditions expected to be encountered with normal use of the generator including, but not limited to, its retail vendors such as Home Depot selling or renting such equipment to customers for indoor home improvement projects.

112.    MTA had a duty to provide adequate and sufficient warnings of all dangerous and potentially dangerous characteristics of the generator including the risk of carbon monoxide poisoning and asphyxiation knowing its generators were used indoors.

113.    MTA had a duty to provide clear and complete instructions including placards on its generators such as the generator rented to Yolanda in order to warn the users that use of generators indoors can cause carbon monoxide poisoning and death in minutes.

114.    MTA breached its duties alleged above and as a result placed into the stream of commerce the subject generator in a defective condition, lacking adequate training materials, placards, and instructions, including, but not limited to, the "Home Depot Tip Sheets" MTA authored for Home Depot, for the generator's use and without adequate warnings of the consequences including risk of death occurring within minutes if such generator was used indoors.

21

115.    MTA, through its manuals, sales literature, advertisements, training materials, and by its authorized employëes or representatives, acting in and the course and scope of their employment, misrepresented material facts concerning the characteristics of the subject generator by the omission of important warning information packaged with and separately placarded directly to the equipment and instructing all persons in the stream of distribution to make certain end users were aware of such hazards described hereinabove.

116.    MTA was aware that persons were using gasoline-powered generators including those manufactured by Honda indoors, but MTA failed to take adequate steps to warn and protect such customers by placing clear, bold, and complete warnings against using such equipment indoors such that MTA was grossly negligent, reckless showing a wanton disregard for human life.

117.    MTA negligently designed, manufactured, certified, tested, and/or supplied the generator and/or safety-related equipment and materials without adequate manuals, training materials, and instructions for its use and without adequate warnings of its dangerous characteristics when MTA knew, or should have known, that the generator was defective, unreasonably dangerous, and prone to cause death if anyone uses such generators indoors.

118.    On account of the negligent conduct of MTA set forth herein and the resulting death of Yolanda, Mr. Estrada is entitled to recover under the Pennsylvania Wrongful Death Act individually and as Administrator of the Estate of Yolanda A. Carias-Santos for pecuniary losses sustained as a proximate result of decedent's death, including loss of monies expended for estate administration, loss of inheritance, and loss of decedent's financial contributions, support, services, care, guidance, advice, companionship, affections, tutelage, comfort, consortium, and interest on the pecuniary losses sustained.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, MTA North America, Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

### COUNT XIV
(Survival Action for Negligence – MTA)

119.    Mr. Estrada incorporates paragraphs 1 through 34 and 109 through 118, inclusive, as if textually set forth at length herein.

120.    Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

121.    As a direct result of the negligent conduct of MTA hereinabove alleged, Plaintiff's decedent suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

122.    As a direct result of the negligent conduct of MTA and the resulting death of Yolanda, Mr. Estrada and the Estate of Yolanda A. Carias-Santos have sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, MTA Distributors, Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

## COUNT XV
(Wrongful Death Action for Strict Liability in Tort – MTA)

123.    Mr. Estrada incorporates herein paragraphs 1 through 34, inclusive, as though textually set forth at length herein.

124.    At all times mentioned herein, the generator equipment with its appurtenant parts, instructions, and warnings was expected to and did in fact reach its intended users and/or consumers without substantial change or alteration of any kind in the condition in which it was sold by Honda.

125.    At all times mentioned herein and at the time of the rental sale and on December 24, 2007, the generator equipment with its appurtenant parts, instructions, and warnings was in a defective condition which was dangerous to its intended users, including Home Depot's customer, Yolanda A. Carias-Santos.

126.    At all times mentioned herein and at the time of the rental sale and on December 24, 2007, the generator equipment with its appurtenant parts, instructions, and warnings was inherently dangerous.

127.    The aforementioned defects in the equipment with its appurtenant parts, instructions, and warnings were a factor, substantial factor, and proximate cause of the carbon monoxide poisoning, asphyxiation, and death of Yolanda A. Carias-Santos.

128.    At all times mentioned herein and at the time of the rental sale and on December 24, 2007 the generator with its appurtenant parts, instructions, "Home Depot Tip Sheets" MTA authored, and warnings was defectively designed, flawed in its manufacture, liable to malfunction with excessive carbon monoxide, and therefore dangerous to its intended users.

129.    At all times mentioned herein, the aforementioned generator with its appurtenant parts, instructions, and warnings lacked adequate warnings which were expected to and did in

24

fact reach the intended users and/or consumers without substantial change or alteration of any kind in its content, quality, or condition than when the generator equipment was rented to Plaintiff's decedent.

130.    MTA is strictly liable in tort to Mr. Estrada for the design, manufacture, marketing, and sale of the Honda defective generator which MTA provided to Home Depot.

131.    On account of the conduct of MTA set forth herein and the resulting death of Yolanda, Mr. Estrada is entitled to recover under the Pennsylvania Wrongful Death Act as Administrator of the Estate of Yolanda A. Carias-Santos for pecuniary losses sustained as a proximate result of Yolanda's death including the loss of monies expended for estate administration, loss of inheritance, and loss of Yolanda's financial contributions, support, services, care, guidance, advice, companionship, affections, tutelage, comfort, consortium, and interest on the pecuniary losses sustained.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, MTA Distributors, Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus punitive damages in excess of $75,000, plus interest, costs, and such other amounts as allowed under law.

COUNT XVI
(Survival Action for Strict Liability in Tort – MTA)

132.    Mr. Estrada incorporates herein paragraphs 1 through 34 and 123 through 131, inclusive, as though textually set forth at length herein.

133.    Mr. Estrada brings this count as Administrator of the Estate of Yolanda A. Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302.

134.    As a direct result of the tortious conduct of MTA hereinabove alleged, Plaintiff's decedent suffered conscious pain and suffering for which recovery is sought under the Pennsylvania Survival Act.

135.    As a direct result of the tortious conduct of MTA and the resulting death of Yolanda, Mr. Estrada and the Estate of Yolanda A. Carias-Santos have sustained pecuniary losses, with interest, including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, MTA Distributors, Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

COUNT XVII
(Wrongful Death Action – Breach of Warranty - MTA)

136.    Mr. Estrada incorporates herein paragraphs 1 through 34 and 124 through 135, inclusive, as though textually set forth at length herein.

137.    MTA expressly and/or impliedly warranted that the gasoline-powered generator rented to Yolanda A. Carias-Santos was merchantable, fit, and safe for the ordinary and particular purposes for which it was sold as evidenced in the promotion, selling, supplying, and/or delivering of the gasoline-powered generator to its distributors, wholesalers, retailers, and end-users including Yolanda.

138.    MTA breached these express implied warranties by delivering and/or supplying the gasoline-powered generator and Home Depot Tip Sheets MTA authored for Home Depot's dissemination to its customers in an unsafe, defective, and unfit condition as described above.

26

139.    The resulting injuries to the Plaintiff were the proximate result of MTA's breach

of warranties including inadequate, insufficient, and flawed product literature including, but not

limited to, Home Depot Tip Sheets MTA authored for Home Depot's dissemination to its

customers.

140.    As a result of MTA's breach of warranties alleged herein, MTA is liable to Mr.

Estrada in his capacity as personal representative pursuant to the Pennsylvania Wrongful Death

Act, 42 Pa. C.S.A. Section 8301, for any and all damages proximately caused thereby including

the damages sustained as the result of the death of Plaintiff's decedent.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant,

MTA Distributors, Inc., in an amount in excess of $150,000 compulsory arbitration limits, plus

interest, costs, and such other amounts as allowed under law.

COUNT XVIII
(Survival Action – Breach of Warranty - MTA)

141.    Mr. Estrada incorporates paragraphs 1 through 34 and 124 through 140,

inclusive, as if textually set forth at length herein.

142.    Mr. Estrada brings this count as Administrator of the Estate of Yolanda A.

Carias-Santos, deceased under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A.

Section 8302.

143.    As a direct result of the breach of express and implied warranties hereinabove

alleged, Yolanda suffered conscious pain and suffering for which recovery is sought under the

Pennsylvania Survival Act.

144.    As a result of the breach of express and implied warranties resulting in the death

of Yolanda, the Estate of Yolanda A. Carias-Santos has sustained pecuniary losses, with interest,

including loss of future earnings and financial contributions to the estate, as well as costs incurred for the administration of the estate.

WHEREFORE, Plaintiff Estrada demands judgment in his favor and against Defendant, MTA Distributors, Inc., in an amount in excess of $150,000 compulsory arbitration limits, punitive damages in excess of $150,000 compulsory arbitration limits, plus interest, costs, and such other amounts as allowed under law.

LAW OFFICES OF JESSE L. PLEET, P.C.

Dated: _9/9/08_

Jesse L. Pleet, Esquire
Attorney for Plaintiff
1150 Berkshire Boulevard, Suite 220
Wyomissing, PA  19610
(610) 373-8570
Attorney I.D.# 34783