

# LAW OFFICES OF JESSE L. PLEET, P.C.

1150 Berkshire Blvd.
Suite 220
Wyomissing, PA 19610

(610) 373-8570
(800) 270-8570
Fax (610) 373-8571

www.lawyers.com/pleetfirm

Jesse L. Pleet
*Certified Civil Trial Specialist*
*National Board Of Trial Advocacy*

November 2, 2009

Certified Paralegals
Sandra M. Gamler
Denise D. Belluch
Ingrid P. Martin

SENT BY FACSIMILE ONLY 267-299-5069
Honorable Paul S. Diamond
U.S. District Court for the Eastern District of Pa.
6613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

FILED

NOV 05 2009

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Re:    Maximino M. Estrada, individually and as Administrator of the Estate of
       Yolanda A. Carias-Santos v. Home Depot USA, Inc., American Honda
       Motor Co., Inc. and MTA Distributors, Inc.
       Civil Action No. 08-4367
       Our File No. 2886

Dear Judge Diamond:

A critical key witness for plaintiff is a former employee of Home Depot, Todd
Beamesderfer. He was listed in pretrial conference memoranda for the parties. Plaintiff
incorporates his pretrial conference memorandum and synopsis of the facts at Document No. 90
concerning general background as it pertains to Mr. Beamesderfer. Parenthetically, the
defendants also believe Mr. Beamesderfer is a crucial witness given his allegations that he spoke
directly to Ms. Santos and warned her not to use the portable gasoline generator indoors. That
fact is in dispute.

## Beamesderfer Health Issue

I had a telephone conversation with Attorney Dubrow on October 10 regarding issues
expected for trial in connection with Home Depot. That was the occasion Attorney Dubrow first
mentioned that Todd Beamesderfer might not be well enough to attend trial because of a medical
condition. Attached is a copy of my confirming letter dated October 13, 2009 to Attorney
Dubrow. I have redacted other aspects of the letter as not related to the Todd Beamesderfer
issue. The letter was copied to other defense counsel.

## Already Deposed Twice

The notion that Mr. Beamesderfer had ongoing debilitating illness regarding a stroke that
would prevent him from testifying in court had not been raised previously by Mr. Beamesderfer.
Home Depot agreed to make arrangements to facilitate the appearance of its former employees at
trial including Todd Beamesderfer until this new issue was recently raised.

Honorable Paul S. Diamond                                            November 2, 2009
U.S. District Court for the Eastern District of Pa.                         Page 2


### Update from Home Depot

Attached is a copy of correspondence faxed to plaintiff's counsel by Attorney Dubrow
October 30, 2009 along with a two-sentence medical excuse from Charles A. Wagner, DO. Dr.
Wagner requests that Mr. Beamesderfer be excused from testifying in court because of his
medical condition and the stress that would have adversely affected his health. As Attorney
Dubrow notes in his letter to me of October 30, 2009, Dr. Wagner's note is very light on
substantive facts to support the assertion. Plaintiff can appreciate it is stressful for any witness to
testify, but plaintiff believes a witness might need more beyond an unsupported allegation of
some stress to testify.

### Mr. Beamesderfer's Depositions

Mr. Beamesderfer was the first witness deposed at the request of plaintiff. Ultimately
there were five Home Depot representatives deposed, but Mr. Beamesderfer's testimony lasted
almost ten hours, collectively, because of the numerous topics relevant to the issues.

Attached are pages 1 and 4 through 10 of the testimony from April 20, 2009. These were
customary, routine instructions provided to a witness. At no time did Mr. Beamesderfer mention
that he had difficulty understanding or participating in the deposition. He never mentioned a
health problem to avoid testimony. Other pages are also attached as described below.

### Stroke Condition

During the course of the testimony was the occasion Mr. Beamesderfer first divulged his
stroke condition. (D.T. 110). He said he had a stroke on November 4, 2007 which took him out
of employment at Home Depot. (D.T. 110). This was his last day of work, but he returned at the
beginning of December 2007 and was fully recovered from his stroke. (D.T. 110). He returned
on a part-time, reduced hours basis working twenty-four to thirty-two hours a week after the
stroke compared to his full-time forty hour week schedule before the stroke. (D.T. 111). He was
out of work at Home Depot from November 4, 2007 until returning on December 15, 2007 (D.T.
111). He returned part-time because of his medical situation. (D.T. 111). He continued a part-
time schedule until January 28, 2008 when he suffered a second stroke in the Home Depot store
in the Tool Rental Center. (D.T. 111).

Mr. Beamesderfer's last day of work was January 28, 2008. There were no workers'
compensation claims or any litigation arising out of his medical condition. (D.T. 225).

### Birth Defects

In addition to the stroke condition, Mr. Beamesderfer testified to two birth defects. One
involved his left arm since he is a partial amputee just below the elbow. The other is that he has
three flaps in his heart instead of four. (D.T. 226). These conditions did not affect his ability to

Honorable Paul S. Diamond                                    November 2, 2009
U.S. District Court for the Eastern District of Pa.                    Page 3

do his job. He was able to manipulate papers at his deposition effectively and was in no pain
sitting at the deposition. (D.T. 227). Additionally, he was able to do all the jobs he described in
his deposition while working at Home Depot. He testified he was always able to accommodate
himself and work all of the equipment he described, which included generators. (D.T. 227-228).
He explained he was able to do his job the exact same way any other employee could do with
both of their arms and both hands. (D.T. 228).

### Numbness in Legs

He testified that he began experiencing numbness in his legs after the second stroke
January 28, 2008. (D.T. 234). At the time he met plaintiff's decedent, Ms. Santos, on
December 18 or 19, 2007, he did not have any medical problems that he associated with the
occasion of his first stroke November 4, 2007 and did not show any symptoms at that time.
(D.T. 234). He testified he thought he was "fully recovered, with no symptoms from that stroke
November 4th." (D.T. 234-235).

The deposition on April 20, 2009 commenced at 9:47 a.m. at the office of plaintiff's
counsel, approximately three blocks from the Home Depot Tool Rental Center. All counsel had
met with Todd Beamesderfer and other Home Depot representatives at the Tool Rental Center
for a view of the area where the rental occurred and then retired to Attorney Pleet's office to
commence the testimony. The deposition April 20 concluded by 5:15 p.m. after 6.5 hours of
testimony.

### Deposition May 22, 2009

The concluding deposition of Mr. Beamesderfer occurred on May 22, 2009 at the next
convenient date among all counsel for this purpose. The testimony lasted from 9:30 a.m. until
12:50 p.m., or approximately 3.5 hours. At no time did the subject of Mr. Beamesderfer's stroke
condition or other health issues arise in the second deposition. He was represented by counsel
and he reserved his right to read and sign his testimony just as he did for the first deposition.

### Necessitous and Compelling Reason

The plaintiff does not believe Mr. Beamesderfer and Dr. Wagner have presented
appropriate evidence to satisfy the court that his testimony should not be taken during the trial.
Attorney Dubrow offered the option of videotaping Mr. Beamesderfer; however, a videotape
trial deposition is a substitute for testimony in court. If Mr. Beamesderfer is supposedly under
stress to testify in court, how could it be any less stressful to appear in front of cameras for a
videotape trial deposition? Additionally, prior to the occasion of the correspondence October 30,
2009 and Dr. Wagner's note dated October 19, 2009, none of the concerns outlined in Attorney
Pleet's letter to Attorney Dubrow October 13, 2009 had been addressed. If transportation is an
issue for Mr. Beamesderfer, plaintiff is willing to arrange for a driver to provide roundtrip
transportation to trial so that Mr. Beamesderfer does not have deal with commuting sixty-five

Honorable Paul S. Diamond                                          November 2, 2009
U.S. District Court for the Eastern District of Pa.                         Page 4

miles from his home to the Federal Courthouse. Additionally, if Mr. Beamesderfer has done any
traveling at all beyond Berks County and/or he is under any medical restrictions that physically
eliminate his ability to travel, such information should be produced. F.R.C.P. No. 43(a) would
seem to require more than just a passing reference of some stress.

Attorney Dubrow notes that his office was trying to obtain a fuller explanation from Dr.
Wagner. Plaintiff's counsel concurs that waiting until the occasion of the final pretrial
conference on November 12 to resolve this might create additional burdens upon all parties to
squeeze in a trial deposition at the last moment, assuming the court agrees that there is a
necessitous compelling medical excuse for Mr. Beamesderfer not to testify in court.

Request for Teleconference

Attorney Dubrow authorized me to share his enclosed letter with the court as part of this
explanation. Attorney Dubrow will be attending a mediation in another matter in Pittsburgh but
advised that I could alert the court of his availability on Thursday, November 5, and Friday,
November 6, for a teleconference. I have a compulsory arbitration in the Court of Common
Pleas of Berks County on Thursday morning, November 5, but would be available in the
afternoon or any time on November 6.

Conclusion

Thank you for your attention to these issues. Attorney Dubrow and I look forward to
your reply on how to address Mr. Beamesderfer's testimony. Thank you for your consideration.

Respectfully yours,

LAW OFFICES OF JESSE L. PLEET, P.C.

Jesse L. Pleet
jpleet@pleetfirm.com

JLP:lkd
Attachments
cc: Kenneth M. Dubrow, Esquire (w/atts) (fax 215-972-7008)
    Tiffany M. Alexander, Esquire (w/atts) (fax 610-964-1981)
    Frederick T. Lachat, Jr., Esquire (w/atts) (fax 215-922-1772)



### LAW OFFICES OF JESSE L. PLEET, P.C.

1150 Berkshire Blvd.
Suite 220
Wyomissing, PA 19610

(610) 373-8570
(800) 270-8570
Fax (610) 373-8571

www.lawyers.com/pleetfirm

Jesse L. Pleet
*Certified Civil Trial Specialist*
*National Board Of Trial Advocacy*

Certified Paralegals
Sandra M. Gamler
Denise D. Belluch
Ingrid P. Martin

October 13, 2009

Kenneth M. Dubrow, Esquire
Chartwell Law Offices
Bell Atlantic Tower Building
1717 Arch Street, 46th Floor
Philadelphia, PA 19103

      Re:    *Estrada v. Home Depot, et al.*
            Our File No. 2886

Dear Mr. Dubrow:

This letter follows our conversation on October 10 regarding many issues expected for trial vis-à-vis Home Depot.

### Todd Beamesderfer

You mentioned that Todd Beamesdefer may not be well enough to attend trial because of his stroke condition. He has testified twice by deposition in my office. He explained his stroke condition. He never made mention that his condition would limit his ability to provide testimony.

Federal Rule of Civil Procedure No. 43 requires "At trial, the witnesses' testimony must be taken in open court unless a federal statute, Federal Rules of Evidence, these rules or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." F.R.C.P. No. 43(a).

Todd Beamesderfer is an essential, key witness. He is the person who recommended the use of the generator. According to Home Depot, Mr. Beamesderfer also allegedly gave various instructions to Ms. Santos regarding the use of the generator.

To the extent it is a transportation issue for Mr. Beamesderfer, perhaps Home Depot can make arrangements for his appearance at trial. I recognize he is no longer an employee of Home Depot, but you mentioned previously that the Home Depot witnesses who had testified would be produced by Home Depot at trial.

Kenneth M. Dubrow, Esquire

October 13, 2009
Page 2

    Mr. Beamesderfer suffered a stroke before he returned to work at Home Depot when he waited on Ms. Santos. He testified he suffered a second stroke sometime thereafter which led to medical disability leave. To the extent Mr. Beamesderfer has been able to drive and travel anywhere within sixty-five miles from his home since the occasion of his depositions and our conversation on October 10, 2009, it would seem to militate against the need to take his videotape trial deposition for presentation in court.

NOV-02-2009 MON 04:41 PM jesse l pleet law office    FAX NO. 16103738571    P. 08
18/30/2009  19:12  2159727008                CHARTWELL LAW                PAGE 02/04
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 7 of 25



# THE *C*HARTWELL
## LAW OFFICES, LLP

Reply to: Philadelphia Office
The Bell Atlantic Tower Building
1717 Arch Street, 46th Floor
(215) 972-7006
(215) 972-7008 (facsimile)

KENNETH M. DUBROW, ESQUIRE
Direct Dial: (215) 972-8411
kdubrow@chartwelllaw.com

October 30, 2009

**VIA TELEFAX AND REGULAR FIRST CLASS MAIL**

Jesse L. Pleet, Esquire
Law Offices of Jesse L. Pleet, P.C.
1150 Berkshire Blvd. Suite 220
Wyomissing, PA 19610

RE:  Maximino M. Estrada, individually and as Administrator of the Estate of
Yolanda A. Carias-Santos v. Home Depot U.S.A., Inc., et al.
U.S.D.C., E.D. Pa.; Civil Action No. 08-CV-4367

Dear Mr. Pleet:

As I earlier advised, Todd Beamesderfer informed my office that due to his medical condition he would be unable to travel to Philadelphia to testify at trial in the above matter. In furtherance of our subsequent discussion addressing this issue, I asked Mr. Beamesderfer to supply me with a letter from his treating physician, explaining his condition and limitations. In response, I received a letter from Dr. Charles A. Wagner dated October 19, 2009, a copy of which is submitted herewith. Therein, Dr. Wagner writes that Mr. Beamesderfer cannot testify in Court as the experience would be stressful, having an adverse effect upon his health.

Mr. Beamesderfer told us he would be available for a video trial deposition to be taken closer to his home, perhaps at your office where his discovery depositions were conducted.

HARRISBURG | MEDFORD, NJ | MELBOURNE, FL | NEW YORK | PHILADELPHIA
PITTSBURGH | SCRANTON | VALLEY FORGE | WILMINGTON, DE

www.chartwelllaw.com

NOV-02-2009 MON 04:41 PM jesse l pleet law office    FAX NO. 16103738571        P. 09
10/30/2009  14:12    2159727008              CHARTWELL LAW              PAGE 03/04

Case 5:08-cv-04367-PD  Document 142  Filed 11/05/09  Page 8 of 25

Jesse L. Pleet, Esquire
October 30, 2009
Page 2

While I certainly understand, and join in, your interest in having Mr.
Beamesderfer testify live, at trial, we must be mindful of his health. Upon receipt
of Dr. Wagner's letter, we contacted Mr. Beamesderfer in hopes of obtaining a
more plenary explanation from Dr. Wagner to assuage our respective concerns
and, if necessary, to present to the Court if the manner of presenting Mr.
Beamesderfer's testimony could not be amicably resolved. To date, we have not
been able to obtain this second letter and, consequently, I am sending you the
initial letter, at minimum, to advise of our progress.

We will continue with our efforts; however, in light of the rapidly
approaching trial date I think we would be remiss not to consider a video trial
deposition for if we wait to address the issue with the Court at the pretrial
conference on November 12, 2009, we will leave ourselves little time to complete
the deposition (if same is mandated by the Court) prior to the commencement of
trial on November 17, 2009.    If you remain unwilling to present Mr.
Beamesderfer's trial testimony in this fashion, we may consider scheduling his
videotape deposition, minimally to preserve the testimony we seek to elicit.
Should you then be successful in compelling Mr. Beamesderfer's appearance at
trial, we will revisit the manner in which we will present the portion of his
testimony we elicit.

Please promptly advise how you intend to proceed. Thank you for your
attention herein.

Very truly yours,

KENNETH M. DUBROW

KMD:tlj
cc: Tiffany M. Alexander, Esquire (w/encl.) (via telefax & regular first class mail)
    Frederick T. Lachat, Jr., Esquire (w/encl.) (via telefax & regular first class mail)
O:\Philly R Drive\S\Santos (34851)\Correspondence (II)\Ltr to Pleet, Esq. 10.30.09.doc



# The Reading Hospital Medical Group

### The Reading Hospital Medical Group at Berkshire Heights

10/19/2009

In re:

Todd Beamesderfer
15 Cecil Ave
Reading, PA 19609

To whom it may concern:

Please excuse Todd Beamesderfer from testifying in court. Todd has a medical
condition and the stress from this would adversely affect his health.

Sincerely,

Charles A Wagner, DO

950 N. Wyomissing Boulevard • Wyomissing, PA 19610

1

1                    IN THE UNITED STATES DISTRICT COURT

                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2

     MAXIMINO M. ESTRADA,          :  CIVIL ACTION NO. 08-4367

3    individually and as           :

     administrator of the estate   :

4    of Yolanda A. Carrias-Santos, :

     deceased,                     :

5                    Plaintiff     :

                                   :

6             vs.                  :

                                   :

7    HOME DEPOT USA, INC.,         :

     AMERICAN HONDA MOTOR CO.,     :

8    INC., and MTA DISTRIBUTORS,   :

     INC.,                         :

9                 Defendants  :  FOR JURY TRIAL

10

11                        ─────────────────

12

                        Oral Deposition of

13                    TODD W. BEAMESDERFER

14                        ─────────────────

15

16      Date:   Monday, April 20, 2009

17      Time:   9:47 a.m.

18      Place:  Law Offices of Jesse L. Pleet, P.C.

                1150 Berkshire Blvd.

19              Suite 220

                P.O. Box 6799

20              Wyomissing, PA  19610

21                        ─────────────────

22

23      COMPUTERIZED REPORTING SERVICES, INC.

                By:  Roxanne Weaver, RPR

24                  3449 Penn Avenue

                Sinking Spring, PA  19608

25

                Phone:  (610) 678-6652

4

1                    P R O C E E D I N G S

2              (It is hereby stipulated by and between

3              counsel that all objections except as

4              to the form of the question be

5              reserved until the time of trial.)

6         (Whereupon, the Reporter marked Todd 1.)

7              TODD W. BEAMESDERFER

8    was called as a witness and, having been duly sworn by

9    the Reporter-Notary Public, was examined and testified as

10   follows:

11   BY MR. PLEET:

12        Q      Would you state your full name, including all

13   middle names, and then spell all names for the record,

14   please.

15        A      Todd W. Beamesderfer.   T-o-d-d, W-a-y-n-e,

16   B-e-a-m-e-s-d-e-r-f-e-r.

17        Q      Your home address?

18        A      15 Cecil, C-e-c-i-l, Avenue, West Lawn.   It's

19   two words.

20        Q      The zip code?

21        A      19609.

22        Q      That's Berks County?

23        A      Yes.

24        Q      Your home telephone there, please?

25        A      (610) 678-7434.

5

1        Q      Mr. Beamesderfer, earlier today we introduced

2    ourselves over at the Home Depot store.  My name is Jesse

3    Pleet.  I represent Maximino Estrada in a lawsuit that he

4    brought against Home Depot, Honda, and a company MTA

5    Distributors, Inc.  Are you aware of that?

6        A      Um-hum.

7        Q      Is that a yes?

8        A      Yes.

9        Q      Have you ever testified at any legal

10   proceedings in your life where you were under oath and a

11   court reporter was taking down all the questions and

12   answers?

13       A      I've been to court a few times, but never at

14   anything like this.

15       Q      Have you ever actually given testimony

16   before?

17       A      Yes.

18       Q      What kind of proceedings were those?

19       A      My neighbor got broken into, their house, and

20   I had to testify for that.

21       Q      Was that in small claims court, like a

22   district judge or justice of the peace?

23       A      No.  It was in a regular courtroom.

24       Q      Was that sometime in the last couple years,

25   or approximately when was that?

NOV-02-2009 MON 04:42 PM Jesse I Pleet law office          FAX NO. 10105730511          P. 14
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 13 of 25

6

1       A       Back in the nineties.

2       Q       You were just an eyewitness to something?

3       A       Um-hum.

4       Q       Is that a yes?

5       A       Yes.

6       Q       Ever any other time that you testified

7  before?

8       A       No.

9       Q       Was that the only time you were ever to

10  court, the occasion that you went to help your neighbor?

11      A       Yes.

12      Q       This is called a deposition.  It is a court

13  proceeding, even though we are not in a courtroom.  The

14  lawyers here are all officers of the court.  This is a

15  court reporter.  You are under oath, giving sworn

16  testimony in response to questions I ask or questions

17  that will come from other counsel.  Do you understand

18  that?

19      A       Yes.

20      Q       You are here being represented by Mr. Werley

21  today for purposes of your deposition.  Do you know what

22  that means?

23      A       Yes.

24      Q       Any time you want to stop and talk to

25  Mr. Werley is agreeable to me, with the exception of if

NOV-02-2009 MON 04:42 PM jesse l pleet law office    FAX NO. 18103738571    P. 15
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 14 of 25

7

1    you are hearing a question that I've asked and you're

2    about to answer, then we'll need to discuss what the

3    protocol would be.  Generally in these proceedings, the

4    point of a deposition is that I can ask you questions

5    about some background on you and information you might

6    have, and that the information has to come solely from

7    you.  Having said that, if there reaches a point where

8    you believe you would like to talk to Mr. Werley

9    privately, just tell me so that we can go off the record

10   and discuss that for a moment.  Do you understand that?

11        A    Yes.

12        Q    If at any time you need to take a break, a

13   comfort break, you need to stop because you just need to

14   stand up, please say so.  This is not an endurance test,

15   although I think we're going to be here for a couple

16   hours, maybe a little longer, since this is my

17   opportunity to ask you some questions regarding what

18   involvement you might have had in connection with the

19   sale or rental of some chemical products and generator

20   and carpet-shampoo equipment from Home Depot.  Do you

21   understand that?

22        A    Yes.

23        Q    Am I speaking loudly enough?

24        A    Yes.

25        Q    How do you wish to be addressed?

NOV-02-2009 MON 04:42 PM jesse l pleet law office     FAX NO. 18103738571     P. 16
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 15 of 25

8

1          A     Todd.

2          Q     If I ask a question that you do not

3    understand, please stop me and tell me you do not

4    understand the question so that I can repeat it for you,

5    or rephrase it.  If you go ahead and answer the question,

6    then I will assume that you heard me, understood me, and

7    are answering to the best of your ability.  Do you

8    understand that?

9          A     Yes.

10         Q     Mr. Werley has reserved your right to read

11   and sign.  Generally what that means is the court

12   reporter will prepare a transcript after we are finished

13   today, sometime over the next week or two, send it to

14   Mr. Werley so that he can review it with you and make

15   sure that the testimony you gave today was your best

16   testimony and it's accurate in all respects.  Do you

17   understand that?

18         A     Yes.

19         Q     Because if you need to make changes to the

20   testimony, you have that right.  But there's a form that

21   you would complete.  And then once I get that form back

22   and attach it to your transcript, that would represent

23   your deposition.  Do you understand that?

24         A     Yes.

25         Q     If you make changes, though, and I or any of

NOV-02-2009 MON 04:42 PM jesse l pleet law office    FAX NO. 16103738571    P. 17
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 16 of 25

9

1    the other lawyers want to follow up with you about those

2    changes, we would have the right to ask you to come back

3    so that we can have some clarification why you changed

4    some answers.  Do you understand that?

5         A    Yes.

6         Q    Can we agree this is the first time we ever

7    met?

8         A    Yes.

9         Q    With that, I want to get some general

10   background information on you, and then, of course, we'll

11   move forward and talk about Home Depot and the equipment

12   that was rented to Yolanda Carrias-Santos; all right?

13        A    Yes.

14        Q    What is your date of birth?

15        A    6/10 of '71.

16        Q    How far did you go in school?

17        A    High school education.

18        Q    Where did you graduate high school?

19        A    Wilson High School.

20        Q    What year?

21        A    1990.

22        Q    Did you have any special training or vo-tech

23   training?

24        A    I went to vo-tech, both east and west.

25        Q    One other rule with these depositions.  The

1    court reporter can take us down one at a time when we

2    speak.  Often you will anticipate the full question and

3    might subconsciously just jump in and start answering.

4    But when we read the transcript, it will be an

5    interrupted question, so your answer might not match up.

6             Conversely, if you start to answer and myself

7    or anyone else here would interrupt your answer, that

8    will be a partial answer on the transcript.  So it's a

9    bit stilted.  Please wait till you hear the full

10   question.

11        A     Yeah.

12        Q     Then I will return that courtesy and wait

13   till you finish your full answer before asking another

14   question.  Does that sound fair?

15        A     That's fair.

16        Q     All right.  What vocational-technical

17   training did you receive?

18        A     I took horticulture, which is landscaping and

19   general plant knowledge, and then I took two quarters of

20   small-engine repair.

21        Q     Were those in your last year that you had

22   those horticulture and small-engine repair classes?

23        A     I took it from tenth grade up to twelfth

24   grade.  But in my senior year I took two semesters of

25   horticulture and then the other two of small-engine

110

1      Q      So from your perspective, one way to have

2   gotten an increase and more compensation would be to go

3   to that next level, unless there were other promotions

4   that you qualified for?

5      A      Yes.

6      Q      Then how long did you stay as an associate

7   and tool tech in the tool department?

8      A      Till 1/28 of 2008.

9      Q      What happened at that point?

10     A      I had a stroke on 11/4 of '07.

11     Q      Did that take you out of employment?

12     A      Yes.

13     Q      So was your last day of work November 4, '07,

14  around that time?

15     A      I came back again in the beginning of

16  December of that year.

17     Q      When you say beginning, what date did you

18  come back?

19     A      Might have been like 12/15, something like

20  that.

21     Q      Did you recover from the stroke?

22     A      Yes.

23     Q      So you came back on full-time, full duty?

24     A      No.   It was just part-time.

25     Q      Was that because of the stroke condition?

1        A        Yes.

2        Q        What were your reduced hours, Todd?

3        A        I was working 10 to 7.

4        Q        10 a.m. till 7 p.m.?

5        A        Yes.

6        Q        How many days a week?

7        A        Like three or four days a week.

8        Q        What was your full-time schedule before that?

9        A        It was 40 hours a week.

10       Q        And the part-time, how many hours a week was

11    it?

12       A        32.

13       Q        Did the stroke occur at work?

14       A        No.

15       Q        So you were out of employment from around

16    November 4, 2007, till returning December 15, 2007?

17       A        Yes.

18       Q        You returned part-time because of your

19    medical situation?

20       A        Yes.

21       Q        Did you continue your part-time schedule at

22    32 hours a week until January 28th of 2008?

23       A        Yes.

24       Q        What happened on January 28th, 2008?

25       A        I had a second stroke in the store.

NOV-02-2009 MON 04:42 PM jesse l pleet law office    FAX NO. 16103738571    P. 21
Case 5:08-cv-04367-PD    Document 142    Filed 11/05/09    Page 20 of 25

225

1    work?

2        A    Yes.

3        Q    That was not a violation of any rules, as far

4    as you knew?

5        A    No.

6        Q    In other words, workers were allowed to

7    moonlight; true?

8            MR. WERLEY:  Objection.

9            THE WITNESS:  Yes.

10           MR. PLEET:  You don't like moonlight, Bryan?

11           MR. WERLEY:  No, I don't like the word.

12   BY MR. PLEET:

13       Q    Give me the date again, Todd, that you had

14   your second stroke and it was your last day of work.

15       A    1/28 of '08.

16       Q    Was there a workers' compensation claim of

17   any sort that Home Depot accepted or honored as part of

18   that stroke that occurred while at Home Depot?

19       A    Not that I remember.

20       Q    Was there any litigation between you and Home

21   Depot that arose out of that medical condition?

22       A    No.

23       Q    Were you getting health benefits to pay for

24   your stroke condition from Home Depot after the first

25   stroke occurred?

NOV-02-2009 MON 04:43 PM jesse l pleet law office    FAX NO. 16103738571    P. 22
Case 5:08-cv-04367-PD   Document 142   Filed 11/05/09   Page 21 of 25

226

1       A       No.

2       Q       Did you have a health benefit from Home

3    Depot?

4       A       No.

5       Q       You were a full-time employee?

6       A       Yes.

7       Q       But there was no health benefit?

8       A       No.

9       Q       What was the source of your health insurance

10   need, if any?

11      A       I had none.

12      Q       You were one of the uninsured for health

13   purposes?

14      A       Yes.

15      Q       You sit here today as a partial amputee.

16   What was the nature of what happened to your left arm,

17   Todd?

18      A       I was born like that.

19      Q       Are there any other birth issues other than

20   what we see on your left arm, besides that?

21      A       Yes.  I have in my heart --  I don't -- A

22   normal person has four flaps.  I only have three.

23      Q       Three --

24      A       Three flaps in my heart.

25      Q       In terms of limitations regarding your

1    employment at Home Depot, did these two medical

2    conditions that you've identified, that is, a left arm --

3    What do they call that, or how do you call that from

4    birth?

5         A    Just a birth defect.

6         Q    Okay.  I don't know in terms of when you

7    spoke to your doctors.  Is that born with nothing below

8    the elbow, or does it start a little higher than the

9    elbow?

10        A    I don't know exactly what you call it.

11        Q    But you are manipulating your left --  It's

12   still an arm.

13        A    Yes.

14        Q    You were working with it very well.  You were

15   able to manipulate papers with us today.  Are you in any

16   pain sitting there?

17        A    No.

18        Q    Did that serve as a limitation for any of

19   your work at Home Depot?

20        A    No.

21        Q    How about any of the jobs you've described?

22        A    No.

23        Q    In other words, you have always been able to

24   accommodate yourself and work all the equipment you've

25   described?

1        A      Yes.

2        Q      And even though you only have one hand,

3    you're able to service all the equipment you've

4    described?

5        A      Yes.

6        Q      Do you have to have any special

7    accommodations with your own equipment to do that?

8        A      No.

9        Q      In other words, if a tool is called for to do

10   a repair, you're able to use it one-handed?

11       A      Yes.

12       Q      So these birth defects that you've described

13   were never an impediment for you getting the jobs that

14   you were seeking?

15       A      Correct.

16       Q      And did Home Depot have to accommodate you in

17   any way to do your job when you were working there --

18       A      No.

19       Q      -- because of those?

20       A      No.

21       Q      In other words, the job you were doing is the

22   same way anybody would do it that had both arms, both

23   hands?

24       A      Yes.

25       Q      When you left Home Depot, if I was to look at

1       Q     How about the legs going numb; when did that

2   start?

3       A     After the last stroke.

4       Q     What problems, if any, did you have after the

5   first stroke?  We know you went back to work.

6       A     Right.

7       Q     What was the date of that first stroke?

8       A     It was 11/4 of '07.

9       Q     You said you came back to Home Depot like

10  December.

11      A     Yeah.  It was the first or second week of

12  December of that year.  I don't remember exact dates.

13      Q     Then you met Ms. Santos.  It would have been

14  the third week of December.

15      A     Yes.

16      Q     18th or 19th.

17      A     Right.

18      Q     Correct?  Did you have any medical problems

19  at all by that point?  By the time you met Ms. Santos,

20  any medical problems at all at that point?

21      A     No.

22      Q     In your mind, had you been fully recovered

23  from your first stroke, with no ongoing symptoms?

24      A     I didn't have any symptoms at that time, no.

25      Q     In other words, in your mind, at that point

1      that you met Ms. Santos, December 18th or 19th of 2007,

2      you were fully recovered, with no symptoms from that

3      stroke of November 4th?

4          A    Yes.

5              MR. PLEET:  We're going to take a break for

6      my own comfort.  Then we'll come back and continue.

7              (Whereupon, at this time a recess was

8              held.)

9              (Whereupon, the Reporter marked Todd 3 and

10             4.)

11     BY MR. PLEET:

12         Q    Looking again at these photographs that we

13     have already marked in Exhibit 2, just a general question

14     to make sure we're all in agreement.  We know that the

15     generator shown on Exhibit 2 is not the generator that

16     was rented to Ms. Santos.  We all agree with that.  Do

17     you understand that?

18         A    Yes.

19         Q    But can you agree that the make and model of

20     the generator shown in Exhibit 2 is the same make and

21     model 3000C Honda generator that was rented to her?

22         A    Yes.

23         Q    In terms of cleaning machines, is that also

24     true?  From what you can tell when you look at the

25     photographs of that equipment, does that appear to be the